IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HARRISON DIVISION

JANET C. MAJESTY                                                             PLAINTIFF

                  v.                    Civil No. 13-3090

CAROLYN W. COLVIN, Commissioner
Social Security Administration                                      DEFENDANT

**MEMORANDUM OPINION**

Plaintiff, Janet Majesty, brings this action under 42 U.S.C. §405(g), seeking judicial review of a decision of the Commissioner of Social Security Administration (Commissioner) denying her claim for a period of disability and disability insurance benefits ("DIB") under Title II and of the Social Security Act (hereinafter "the Act"), 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). In this judicial review, the court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. *See* 42 U.S.C. § 405(g).

I.    **Procedural Background:**

Plaintiff filed for DIB on March 2, 2011, alleging an onset date of August 29, 2005, due to anxiety, blindness, headaches, and arthritis. Tr. 140-146, 159, 163, 178-179, 188-190, 192, 199, 201. The Commissioner denied Plaintiff's applications initially and on reconsideration. Tr. 70-74, 77-78. An administrative hearing was held on May 24, 2012. Tr. 25-69. Plaintiff was present and represented by counsel.

Plaintiff was 48 years old as of her onset date and 53 years old as of her date last insured. Tr. 19, 31, 164. She possessed the equivalent of a high school education, and past relevant work

("PRW") experience as a supervisor, wardrobe specialty worker, and cashier. Tr. 19, 32-33, 56, 164, 170-177. Plaintiff had a date last insured of March 31, 2011. Tr. 12.

On August 22, 2012, the ALJ found Plaintiff's anxiety, depression, arthritis, degenerative disk disease, fibromyalgia, and left eye blindness to be severe, but concluded they did not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4. Tr. 12-15. After partially discrediting Plaintiff's subjective complaints, the ALJ determined that she retained the residual functional capacity ("RFC") to perform light work with the following limitations:

> she can sit, stand and/or walk for 6 hours out of an 8-hour workday, with normal breaks; she can also push and/or pull within the limits of the light exertional level; she can perform work that requires occasional visual acuity; she can perform frequent fingering bilaterally; and she can perform work where interpersonal contact is incidental to the work performed, the complexity of tasks is learned and performed by rote, with few variables and little judgment and the supervision required is simple, direct, and concrete.

Tr. 15. With the assistance of a vocational expert, the ALJ the concluded that Plaintiff could perform work as a tanning salon attendant and inspector/checker. Tr. 20.

Plaintiff appealed this decision to the Appeals Council, but said request for review was denied on August 16, 2013. Tr. 1-4. Subsequently, Plaintiff filed this action. ECF No. 1. Both parties have filed appeal briefs, and the case is now ready for decision. ECF Nos. 10, 11.

**II.    Applicable Law:**

This court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. *Ramirez v. Barnhart*, 292 F.3d 576, 583 (8th Cir. 2002). Substantial evidence is less than a preponderance but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. The ALJ's decision must be

affirmed if the record contains substantial evidence to support it. *Edwards v. Barnhart*, 314 F.3d 964, 966 (8th Cir. 2003). As long as there is substantial evidence in the record that supports the Commissioner's decision, the court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the court would have decided the case differently. *Haley v. Massanari*, 258 F.3d 742, 747 (8th Cir. 2001). In other words, if after reviewing the record it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed. *Young v. Apfel*, 221 F.3d 1065, 1068 (8th Cir. 2000).

It is well-established that a claimant for Social Security disability benefits has the burden of proving her disability by establishing a physical or mental disability that has lasted at least one year and that prevents her from engaging in any substantial gainful activity. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir.2001); *see also* 42 U.S.C. § § 423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § § 423(d)(3), 1382(3)(c). A Plaintiff must show that his or her disability, not simply their impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require him to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant has engaged in substantial gainful activity since filing his or her claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past

relevant work; and, (5) whether the claimant is able to perform other work in the national economy given his or her age, education, and experience. *See* 20 C.F.R. § § 404.1520(a)-(f)(2003). Only if the final stage is reached does the fact finder consider the plaintiff's age, education, and work experience in light of his or her residual functional capacity. *See McCoy v. Schweiker*, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C .F.R. § § 404.1520, 416.920 (2003).

### III.   Discussion:

Plaintiff raises the following issues on appeal: 1) The ALJ erred in his RFC determination and 2) The ALJ erred by failing to find Plaintiff's headaches to be a severe impairment. We disagree. The Court has reviewed the entire transcript. The complete set of facts and arguments are presented in the parties' briefs and the ALJ's opinion, and are repeated here only to the extent necessary.

#### A.   RFC Determination:

In her first argument, Plaintiff contends that the ALJ erred with regard to his RFC determination because he relied on the RFC assessments of non-examining, consultants over those of consultative examiners. RFC is the most a person can do despite that person's limitations. 20 C.F.R. § 404.1545(a)(1). A disability claimant has the burden of establishing his or her RFC. *See Masterson v. Barnhart*, 363 F.3d 731, 737 (8th Cir. 2004). "The ALJ determines a claimant's RFC based on all relevant evidence in the record, including medical records, observations of treating physicians and others, and the claimant's own descriptions of his or her limitations." *Davidson v. Astrue*, 578 F.3d 838, 844 (8th Cir. 2009)*; see also Jones v. Astrue*, 619 F.3d 963, 971 (8th Cir. 2010) (ALJ is responsible for determining RFC based on

4

all relevant evidence, including medical records, observations of treating physicians and others, and claimant's own description of his limitations).

Generally, a treating physician's opinion is given more weight than other sources in a disability proceeding. 20 C.F.R. § 404.1527(c)(2). Indeed, when the treating physician's opinion is supported by proper medical testing, and is not inconsistent with other substantial evidence in the record, the ALJ must give the opinion controlling weight. *Id*. "However, [a]n ALJ may discount or even disregard the opinion of a treating physician where other medical assessments are supported by better or more thorough medical evidence, or where a treating physician renders inconsistent opinions that undermine the credibility of such opinions." *Wildman v. Astrue*, 596 F.3d 959, 964 (8th Cir. 2010) (alteration in original) (internal quotation omitted). And, while non-examining sources who have no examining or treating relationship with the Plaintiff are generally afforded little or no weight, the weight given their opinions depends on the degree to which those opinions consider all of the pertinent evidence in the case, including the opinions of the treating and other examining sources. 20 C.F.R. § 416.927(d)(3).

From her alleged onset date through her date last insured, Plaintiff was treated by her primary care physician, Dr. Blake Chitsey. During this time period, she was treated for a variety of ailments including lumbago, right hip pain, urinary incontinence with sneezing or coughing, seasonal allergies, sinusitis, cellulitis, anxiety, bereavement depression following the sudden loss of her adult son, chest pain, and peptic ulcer disease. Tr. 292-311, 317-319, 321, 324, 329-331, 423-428. Beginning in 2004, Dr. Chitsey consistently prescribed Xanax to treat her anxiety. Lexapro was added in 2009. Tr. 317. In 2011, he also began prescribing Enablex for her urinary incontinence. Tr. 425-427.

5

Plaintiff only sought out treatment for her alleged back, leg, and hip pain on three occasions during the relevant time period. X-rays conducted in 2006 revealed minimal disc degeneration at the C5-C6 level. Tr. 290. A 2011 MRI of Plaintiff's lumbar spine also revealed moderate degenerative changes consistent with osteoarthritis and degenerative disc disease, most pronounced at the L4-5 and L5-S1 levels, a posterior protrusion at the L4-5 level representing a small to moderate disc bulge, and a posterior protrusion at the L5-S1 level representing a small disc bulge. Tr. 421. However, at no time did Plaintiff receive prescriptions for pain medication. Tr. 329-331, 425-428. *See Haynes v. Shalala*, 26 F.3d 812, 814 (8th Cir. 1994) (lack of strong pain medication was inconsistent with disabling pain). In fact, at the hearing, Plaintiff admitted taking Aleve (Naproxen Sodium) to treat her pain. Tr. 35. *See Hepp v. Astrue*, 511 F. 3d 798, 807 (8th Cir. 2008) (moderate, over-the-counter medication for pain does not support allegations of disabling pain). Further, in May 2011, Dr. Chitsey performed a physical exam revealing no abnormalities with good general health, good exercise tolerance, and the ability to perform normal activities. Tr. 329-331. *See Raney v. Barnhart*, 396 F.3d 1007, 1010 (8th Cir. 2005) (none of the claimant's treating physicians opined the claimant was so impaired or disabled that the claimant could not work at any job).

In addition to her treatment by Dr. Chitsey, Plaintiff presented in the emergency room on at least two occasions following physical altercations with family members. However, in spite of allegedly sustaining head injuries, CT scans of her head conducted in both 2006 and 2009 were unremarkable.[1] Tr. 270-278, 280-291. And, although exams revealed some tenderness and

---

[1] This clearly undermines Plaintiff's argument regarding chronic pain and resulting brain atrophy.

6

motion deficits in her back and neck, these limitations were not permanent as Dr. Chitsey's follow-up exams revealed no limits in Plaintiff's range of motion.

In January 2009, Plaintiff was hospitalized for two days due to chest pain. Tr. 243-266. Examination and testing led to a diagnosis of non-cardiac chest pain with uncertain etiology. An exercise cardiolite stress test and an echocardiogram showed a moderately dilated left atrium, a moderately dilated right atrium, a mild to moderate regurgitation of the tricuspid valve, and an ejection fraction rate of 62%. Dr. Chitsey believed her pain was due to the combination of her anxiety and peptic ulcer disease. Tr. 317. He prescribed Aciphex, Xanax, and Lexapro. No further treatment was sought for chest pain.

On June 24, 2011, Dr. Shannon Brownfield conducted a consultative physical examination. Tr. 333-337. An examination revealed a full range of motion in the joints and spine with no muscle spasm, weakness, or atrophy, and intact neurological reflexes. The only documented abnormalities were stiff and painful hands and bilateral trigger points throughout. However, Plaintiff was found to be able to hold a pen and write; touch fingertips to palm; oppose thumb to fingers; pick up a coin; walk on heel and toes; squat and arise from a squatting position; and, normal grip strength. Dr. Brownfield diagnosed Plaintiff with probable severe and untreated fibromyalgia, generalized anxiety disorder, and osteoarthritis of the hands and fingers. Due to these impairments, Dr. Brownfield assessed globally severe limitations due to pain and severe limitations in maintaining prolonged positioning.

On June 28, 2011, Dr. Terry Effird performed a consultative mental diagnostic evaluation. He noted Plaintiff's history of treatment from her primary physician for anxiety and depression. Tr. 339-343. Plaintiff alleged an inability to work due to pain and an inability to

7

deal with people. Panic attacks, social anxiety, apprehension, irritability, and excessive worry were also endorsed by the Plaintiff. Dr. Effird observed Plaintiff as being generally dysphoric in mood with an affect that was appropriate to content. Her thought processes were primarily logical, relevant, and goal-directed; her fund of knowledge consistent with low to low average intellectual functioning; her ability to communicate and interact socially adequate, her ability to perform basic cognitive tasks required for basic work-like activities adequate; her ability to track and respond for purposes of evaluation adequate; and, her ability to complete most tasks within a time frame adequate. No remarkable problems with persistence were document. Dr. Effird diagnosed Plaintiff with major depressive disorder and generalized anxiety disorder. He found her global assessment of functioning (GAF) to be in the range of 55-65, indicative of only moderate limitations. *See* DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS IV-TR 34 (4th ed. 2000). And, Dr. Effird noted that she maintained the ability to perform most activities of daily living independently, although she did report the need to space out those tasks.

On June 28, 2011, Dr. Julius Petty, a non-examining, consultant physician reviewed Plaintiff's medical records and completed a physical RFC assessment. Tr. 349-356. He concluded that Plaintiff could lift 10 pounds frequently; 20 pounds occasionally; and, sit, stand, and walk for about 6 hours in an 8-hour workday.

On June 29, 2011, Dr. Winston Brown, a non-examining, psychologist reviewed Plaintiff's medical records and completed a mental RFC assessment and a psychiatric review technique form. Tr. 361-379. He assessed Plaintiff with moderate limitations in the areas of carrying out detailed instructions; maintaining attention and concentration for extended periods; sustaining an ordinary routine without special supervision; completing a normal workday and

8

workweek without interruptions from psychologically based symptoms; performing at a consistent pace without an unreasonable number and length of rest periods; accepting instructions and responding appropriately to criticism from supervisors; responding appropriately to changes in the work setting; and, setting realistic goals or making plans independently of others. No periods of decompensation were noted.

The ALJ determined that Plaintiff could perform light work involving frequent bilateral fingering and occasional visual acuity where the interpersonal contact is incidental to the work performed, the complexity of tasks is learned and performed by rote, with few variables and little judgment and the supervision required is simple, direct, and concrete. After a thorough review of the evidence of record, we agree with this assessment.

Although Dr. Brownfield diagnosed Plaintiff with probable severe fibromyalgia, the medical evidence of record simply does not support his assessment. First, Dr. Brownfield did not define what was meant by severe limitations. And, given that his physical findings were only of stiffness in her hands and fingers and bilateral trigger points having no impact on her range of motion or neurological exam, this determination is clearly not supported by the record. Further, Plaintiff sought out treatment for pain on only three occasions during the relevant time period, was never diagnosed with fibromyalgia, was prescribed no medication to treat her alleged pain, had consistently unremarkable physical exams, and had objective findings revealing no more than moderate limitations.

Plaintiff was also able to earn $12,875.38 in 2006 working 12 hour days for approximately four months, evidencing at least some capacity to work in spite of her alleged pain. *See Goff v. Barnhart,* 421 F.3d 785, 793 (8th Cir.2005) (absent a showing of deterioration,

9

working after the onset of an impairment is some evidence of an ability to work). Likewise, her ability to attend church, attend her child's school functions, drive, shop in stores for food and necessities, watch television, perform household chores, and care for her children undermine her reports of disabling pain. Tr. 180, 187, 209-230. *See Riggins v. Apfel*, 177 F.3d 689, 692 (8th Cir.1999) (finding activities such as driving his children to work, driving his wife to school, shopping, visiting his mother, taking a break with his wife between classes, watching television, and playing cards were inconsistent with plaintiff's complaints of disabling pain).

Further, Plaintiff's anxiety and depression appears to have been amenable to treatment as she was consistently prescribed the same antidepressant and anti-anxiety medications over the course of the relevant time period. And, her condition never necessitated formal mental outpatient or inpatient treatment. *See Kirby v. Astrue*, 500 F.3d 705, 709 (8th Cir. 2007) (lack of formal treatment by a psychiatrist, psychologist, or other mental health professional is a significant consideration when evaluating Plaintiff's allegations of disability due to a mental impairment).

Although Plaintiff contends that her financial situation was an impediment to her obtaining medications and treatment, there is no evidence to indicate that Plaintiff was ever denied medication or treatment due to her finances. Likewise, we can find no evidence to show that she sought out treatment or medication assistance through the various programs that are available at low or no cost to qualified applicants. *See Murphy v. Sullivan*, 953 F.2d 383, 386-87 (8th Cir. 1992) (it is inconsistent with the degree of pain and disability asserted where no evidence exists that claimant attempted to find any low cost or no cost medical treatment for alleged pain and disability). As such, we do not find her failure to seek out treatment from a

mental health professional to be justified. And, we find substantial evidence to support the ALJ's RFC determination in this case.

**B.    Severe Impairments:**

Plaintiff also contends that the ALJ erred by failing to include her headaches as a severe impairment. An impairment or combination of impairments is "severe" when it significantly limits a claimant's abilities to perform basic work activities. 20 C.F.R. §§ 404. 1520(c), 404.1521(b); Social Security Ruling (SSR) 96-3p, 1996 WL 374181. An impairment or combination of impairments is not severe if it has no more than a minimal effect on the claimant's ability to do basic work activities. 20 C.F.R. § 404.1521(a); SSR 96-3p; *see also Kirby v. Astrue*, 500 F.3d 705, 707-08 (8th Cir. 2007). Although severity is "not an onerousrequirement for the claimant to meet," it is "not a toothless standard" either. *Kirby*, 500 F.3d at 708. However, a mere diagnosis is not sufficient to prove disability, absent some evidence to establish a functional loss resulting from that diagnosis. *See Trenary v. Bowen*, 898 F.2d 1361, 1364 (8th Cir. 1990).

Here, Plaintiff has failed to present evidence showing that her alleged headaches had more than a minimal effect on her abilities to perform basic work activities, and therefore qualified as an additional severe impairment. The record reveals treatment for headaches on only one occasion. *See Novotny v. Chater*, 72 F.3d 669, 671 (8th Cir. 1995) (A lack of regular and sustained treatment is an indication that the claimant's impairments are non-severe and not significantly limiting for twelve continuous months). In June 2006, Plaintiff reported tension headaches two to three days per week, starting in her neck and going like a band up and over the top of her head. Tr. 322. She indicated that she had taken Fioricet in the past for similar

11

headaches with "good success." At this time, Plaintiff was again prescribed Fioricet with instruction that she would require a preventative medication if she were to take more than three Fioricet per week. The undersigned assumes that the Fioricet provided good relief from her headaches, as she sought no further treatment for this impairment. *See Mittlestedt v. Apfel*, 204 F.3d 847, 852 (8th Cir. 2000) (the ALJ properly found that the claimant had no severe impairments where the claimant's impairments were controlled by medication). Therefore, we find that the ALJ properly concluded that her headaches were not severe. And, we can discern no evidence to suggest that these non-severe headaches would further diminish the RFC determination of the ALJ.

IV. <u>Conclusion</u>:

Accordingly, having carefully reviewed the record, the undersigned finds substantial evidence supporting the ALJ's decision denying the Plaintiff benefits, and thus the decision should be affirmed. The undersigned further finds that the Plaintiff's Complaint should be dismissed with prejudice.

DATED this 9th day of October 2014.

/s/ *J. Marschewski*
HON. JAMES R. MARSCHEWSKI
CHIEF UNITED STATES MAGISTRATE JUDGE

AO72A
(Rev. 8/82)